Burke, J.
The threshold question presented by this prosecution embraces the criminal responsibility of a felon for a homicide perpetrated by someone other than himself or an *50 accomplice during the commission of a felony. Section 1044 of the Penal Law defines murder in the first degree as follows:
“The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed:
a * * *
“ 2, * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, a felony either upon or affecting the person killed or otherwise ” (emphasis added).
It would seem that in light of the common law, judicial interpretation and a fair reading, the Legislature intended that felony murder be confined to certain homicides committed by the felons. The dismissal of the indictment by the courts below was, therefore, proper.
The facts pertinent to this appeal are substantially uncontroverted and may consequently he introduced In summary fashion. Defendant and his companions, while patrons of a tavern in Nassau County, became embroiled in an altercation with one Vernon Gray and his brother. This argument continued into the street and resulted in the near fatal shooting of Vernon Gray, and a gun battle with an approaching police officer. Sometime during an attempted vehicular escape, one Bennie Gibson, the owner of the tavern, came to the assistance of the officer. He testified that both he and the officer were firing -at the automobile. This exchange of shots culminated in the deaths of one Lee (a companion of defendant) and one Moses (a bystander). The record discloses that the mortal wounds were inflicted by shots from Gibson ’-s rifle.
The Grand Jury returned two indictments containing assault and murder counts. The Appellate Division subsequently affirmed the County Court’s dismissal of the indictment charging defendant with the willful and felonious murder of Moses and Lee with malice aforethought.
It is the People ’s contention that the statutory phrase, “ a person engaged in. the commission of, or in an attempt to commit, a felony ’ ’, was intended to include, in addition to the felon and accomplices, “all persons involved”, e.g., the victim of the felony and those assisting Mm. They contend, therefore, that, since the deaths of Lee and Moses were the foreseeable consequence of this assault, the defendant should be held *51 criminally responsible for felony murder.[1] We do not so construe the statute. We shall not vindicate the wrong by a strained interpretation of this legislative codification of the common law. Penal responsibility, unlike moral responsibility, cannot be extended beyond the fair scope of the statutory mandate (Penal Law, § 21; People v. Ryan, 263 N. Y. 298, 302), The felony murder doctrine had its origin in the common law during an era when nearly all felonies were punishable by death (People v. Enoch, 13 Wend. 159). Because this often resulted in a barbaric application, the doctrine passed through a series of judicial and later legislative restrictions and limitations.[2] However, both at common law and under the New York statute (supra), a felonious homicide is made murder in the first degree by operation of the legal fiction of transferred intent, which thereby characterizes the homicide as committed with malice prepense. (People v. Luscomb, 292 N, Y. 390, 395; People v. Huter, 184 N. Y. 237; Mansell and Herbert’s Case, 2 Dyer 128b; 4 Blackstone, Comm. *198.) It is the malice of the underlying felony that is attributed to the felon (People v. Luscomb, supra; Commonwealth v. Guida, 341 Pa. 305). Thus, a felony murder embraces not any killing incidentally coincident with the felony (People v. Ryan, supra; People v. Sobieskoda, 235 N. Y. 411; People v. Collins, 234 N. Y. 355) but only those committed by one of the criminals in the attempted execution of the unlawful end. Although the homicide itself need not be within the common design (People v. La Marca, 3 N Y 2d 452; People v. Nichols, 308 N. Y. 1038; People v. Keshner, 304 N. Y. 968), the ad which results in death must be in furtherance of the unlawful purpose (People v. Ryan, supra, p. 303; People v. Udwin, 254 N. Y. 255, 260-262; People v. Sobieskoda, supra, *52 p. 416; People v. Michalow, 229 N. Y. 325; People v. Marwig, 227 N. Y. 382, 391; People v. Chapman, 224 N. Y. 463; People v. Giusto, 206 N. Y. 67, 73-76; People v. Friedman, 205 N. Y. 161; People v. Madas, 201 N. Y. 349; People v. Giro, 197 N. Y. 152; People v. Flanigan, 174 N. Y. 356; People v. Wilson, 145 N. Y. 628; Buel v. People, 78 N. Y. 492, 499; Ruloff v. People, 45 N. Y. 213; 1937 Report of N. Y. Law Rev. Comm., pp. 641-676; Corcoran, Felony Murder in New York, 6 Fordham L. Rev. 43, 65-67).
In other words, in order for a felon to be guilty of the homicide, the act (as in agency) must be “ either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose.” (Commonwealth v. Campbell, 89 Mass. 541, 544 [rioter not guilty of a murder for accidental killing of an innocent person by those suppressing the riot]; Butler v. People, 125 Ill. 641 [felon not guilty although rowdy conduct resulted in accidental killing of bystander by town marshall]; People v. Garippo, 292 Ill. 293 [felon not guilty where unknown person killed his accomplice during course of a robbery]; Commonwealth v. Moore, 121 Ky. 97 [felon not guilty where victim of robbery accidentally killed a bystander]; State v. Oxendine, 187 N. C. 658 [felon not guilty where victim of assault killed a bystander].)[3] Where, however, the felon kills someone during the felony, but in a separate and distinct act and to satisfy his own end, his accomplice in the felony is not guilty of murder in the first degree (People v. Sobieskoda, 235 N. Y. 411, 416, supra). If the-lethal act is in furtherance of their common purpose, the accomplice is guilty[1] even though there was an express agreement not to kill, and even if he actually attempts to prevent the homicide (People v. Friedman, supra).
In People v. Giro (197 N. Y. 152, supra) defendants Giro and Schle-iman were jointly indicted for homicide while engaged in *53 the commission of a felony. There was but circumstantial evidence as to whether the fatal shots were fired by either of the defendants or by a victim of the burglary. The trial court charged, and we quoted with apparent approval that, in order to convict the defendants, the People must prove beyond a reasonable doubt that the mortal wounds were inflicted by one of the felons.
In People v. Udwin (254 N. Y. 255, supra) one of a group of convicts was slain during an attempted escape. Evidence as to the origin of the fatal bullet was also circumstantial, and we again approved the law of the case which allowed the jury to convict only if the People “ established beyond a reasonable doubt that the shot which killed [decedent] was fired by one of the convicts engaged with the defendants, or some of them, in a common purpose or design to unlawfully and feloniously escape.” (254 N. Y., p. 262; cf. People v. LaBarbera, 159 Misc. 177.)
Although several jurisdictions (People v. Wilburn, 314 P. 2d 590 [Cal.], affd. 49 Cal. 2d 714; Peoples v. Podolski, 332 Mich. 508; cf. People v. Cabaltero; 31 Cal. App. 2d 52) would, by application of the proximate cause theory, hold a felon responsible for a homicide committed, by someone other than a coconspirator, during the commission of a felony, at least one jurisdiction has repudiated its former position as an “ unwarranted judicial extension of the felony-murder rule ”. (Commonwealth v. Redline, 391 Pa. 486, 508.) Formerly the leading decision in that jurisdiction (Commonwealth v. Almeida, 362 Pa. 596) held the defendant liable for the killing of an innocent bystander by a police officer, because it was defendant’s act which set in motion the chain of events which resulted in the homicide. This far-reaching extension was carried to its logical conclusion in Commonwealth v. Thomas (382 Pa. 639) wherein the court found that a felon could be liable for the justifiable slaying of his accomplice by the robbery victim. The Bedline case 9supra) expressly overruled the Thomas decision, and, in limiting the Almeida case to its facts, cast serious doubt as to its rationale.
It is our opinion that, in view of the peculiar wording of our statute, we need not be concerned with the application of the rules of causation and foreseeability in situations such as that now before us. The statute defines as murder in the first degree *54 only those homicides which are neither excusable n-or justifiable. The lethal acts of Gibson were at least excusable and could not, therefore, support a felony murder charge. It is apparent, therefore, that the " person ” referred to in subdivision 2 of section 1044 of the Penal Law is that person defined in section 2 of the same law, i.e., a principal in the underlying felony.
Accordingly, the order appealed from should he affirmed.
Chief Judge Desmond and Judges Dye, Fuld, Froessel. Van Voorhis and Fosteb concur.
Order affirmed.

. A most illogical consequence of this theory may, by application of the merger doctrine (People v. Wagner, 245 N. Y. 143; People v. Moran, 246 N. Y. 100) find a defendant not guilty of a felony murder if he kills the assaulted victim, but, oddly enough, guilty if the assaulted victim kills another.

. Almost every jurisdiction in the United States has enacted statutes defining a felony murder. Although most jurisdictions limit its application to specified violent felonies (e.g., arson, rape, robbery and burglary), New York and the minority make homicide during the commission of any felony murder in the first degree (People v. La Marca, 3 N Y 2d 452; Arent and MacDonald, The Felony Murder Doctrine and Its Application Under the New York Statutes, 20s Com. L. Q. 288, 294).

. There are at least 16 possible factual variations of homicide which may occur during the progress of a felony. For example, the fatal act can be caused by the defendant, one of his accomplices, the victim of the felony, or a bystander; and in each case it may be the one acting or any of the others who is killed. (See Hitchler, The Killer and His Victim in Felony-Murder Cases, 53 Dick. L. Rev. 3, for an annotated survey of each situation.)